UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMY LEE OTIS,<br>　　Plaintiff | ) <br> ) | CIVIL ACTION NO |
| v. | ) <br> ) | |
| GALLAGHER BUICK GMC INC.,<br>　　Defendant | ) <br> ) | JURY TRIAL DEMANDED |
| | ) | FEBRUARY 9, 2016 |

## COMPLAINT

### I. INTRODUCTION

1.　　This is a suit brought by a consumer under the Magnuson-Moss Warranty Act ("Magnuson-Moss"), 15 U.S.C. §§ 2301 *et seq.,* and Article 2 of the Uniform Commercial Code, Conn. Gen. Stat. § 42a-2-101 *et seq.* ("UCC"), against Gallagher Buick GMC Inc. ("Gallagher"), a car dealership that fraudulently and maliciously sold her a 2011 Buick Regal (the "Vehicle") under the description of "Certified Pre-Owned" ("CPO"), even though the Vehicle had previously been in one or more accidents or similar events that caused structural damage and that had not been properly repaired and restored. Consequently, the Vehicle was ineligible for inclusion in General Motor's ("GM") CPO program. Plaintiff also asserts pendent claims under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110 *et seq.*

### II. PARTIES

2.　　Plaintiff, Amy Lee Otis, is an individual residing in Manchester, Connecticut, and she is a consumer as that term is defined in §2301(3) of Magnuson-Moss.

3. Defendant Gallagher is a Delaware Corporation that owns and operates a motor vehicle dealership in New Britain, Connecticut, and it is a warrantor as that term is defined in §2301(5) of Magnuson-Moss.

### III. JURISIDCTION

4. Jurisdiction in this court is proper pursuant to 15 U.S.C. § 2310(d)(1)(B), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

5. This Court has jurisdiction over Gallagher because it is located in Connecticut and it regularly conducts business in Connecticut.

6. Venue in this Court is proper, because the Plaintiff is a resident of Connecticut and the transaction occurred in this state.

### IV. FACTUAL ALLEGATIONS

7. General Motors and its dealerships, including Gallagher, promote General Motor's CPO program as a means of marketing pre-owned vehicles.

8. Vehicles included in the CPO program are represented as having been subjected to a comprehensive 172-point inspection and reconditioning process by a General Motors dealership to ensure that they meet the program's stringent certification criteria.

9. Prior to July 7, 2015, Plaintiff saw the Vehicle advertised for sale as a CPO GM Vehicle.

10. On July 7, 2015, Plaintiff went to Gallagher and test drove the Vehicle.

11. Plaintiff complained to the salesman, Frank Prusinowski ("Prusinowski"), that the Vehicle had a rough idle when stopped, and Prusinowski told her that "all GM cars run this way."

2

12.     Plaintiff had never previously owned a GM vehicle, and she believed Prusinowski's statements that it was normal operation for a GM vehicle.  She paid Gallagher a $100.00 deposit.

13.     Plaintiff returned to Gallagher on July 8, 2015, and she reviewed a Carfax report that noted that the Vehicle had been in an accident.

14.     Plaintiff asked Prusinowski about the Carfax report, and he told her that the accident was minor and did not involve any frame damage.

15.     Unbeknownst to Plaintiff, the Vehicle had previously been involved in two accidents or similar events and had suffered structural damage that had not been properly repaired.

16.     The Vehicle was originally sold by and serviced by Gallagher, and Gallagher may have performed the deficient repairs on the Vehicle.

17.     Plaintiff believed that Gallagher had thoroughly inspected the Vehicle under the CPO requirements, and she believed that the Vehicle met the criteria for CPO certification under the GM guidelines.

18.     Based upon Prusinowski's statement that the prior accident was minor and that the Vehicle did not have any frame damage, and based upon the Vehicle being described as a CPO GM vehicle, Plaintiff decided to proceed with the purchase.

19.     On or about July 10, 2015, Gallagher prepared and presented to Plaintiff a retail purchase order and a retail installment contract that utilized a cash price of $13,500, plus various fees and taxes.

20.     The Buyer's Guide for the Vehicle, which is incorporated into the contract for purchase pursuant to its terms and pursuant to Regulations of the Federal Trade

Commission, described the Vehicle as "CERTIFIED PRE-OWNED" and stated the Vehicle came with a bumper-to-bumper limited warranty of 12 months/12,000-Mile from the date of purchase, and, a powertrain limited warranty of 5-year/100,000-Mile from the original in-service date.

21.     Gallagher also provided Plaintiff with a copy of the CT Licensed Dealer Vehicle Inspection Form K-208, which certified that the vehicle had been inspected and was deemed to be in condition for legal operation on Connecticut highways.

22.     Plaintiff took delivery of the Vehicle on July 10, 2015.

23.     Plaintiff began to experience mechanical problems with the Vehicle within a week after purchase.  She brought the Vehicle back to Gallagher for repairs on at least three occasions, but Gallagher was unable to repair the Vehicle's defects to Plaintiff's satisfaction.

24.     Additionally, the Vehicle was delivered with broken fog light trim, non-OEM and unmatched fog light bulbs, a bad battery with corroded terminals, a missing ash tray, low Freon levels, a worn tensioner and belt, worn windshield wiper blades, a leaking brake booster, a defective blower motor, and unbalanced tires, and it had a rough idle.

25.     None of the foregoing conditions are consistent with a vehicle that has been inspected and reconditioned and certified under the GM CPO program.

26.     On November 17, 2015, Plaintiff spoke with a sales manager at Gallagher, Mackey Harris, and she demanded that she be permitted to return the Vehicle and obtain a refund of the purchase price of the Vehicle, which demand was refused.

27. Plaintiff learned that the prior damage to the Vehicle may have been more extensive than had been represented by Prusinowski on November 19, 2015, when she attempted to trade it for another vehicle at another dealership.

28. Plaintiff again attempted to revoke her acceptance of the Vehicle by leaving a message for the service manager to contact her, but he did not contact her as requested.

29. On January 4, 2016, Plaintiff had an independent auto body technician inspect the Vehicle in order to ascertain the extent of the prior damage and the current condition of the Vehicle.

30. On or about January 4, 2016, the independent expert provided Plaintiff with a report that the Vehicle had been involved in at least two collisions or similar incidents that caused structural damage to the Vehicle, that the Vehicle had not been properly repaired, and that the Vehicle was not in merchantable condition at the time of sale.

31. Plaintiff also learned at that time that the Vehicle had serious safety concerns that should be addressed before driving it further.

32. Because of the extent of the prior damage and the improper repairs, the Vehicle did not meet the criteria for certification under GM's CPO program at the time of sale to Plaintiff.

33. As a consequence of the defects, the value of the Vehicle at the time of purchase was $7,788, an amount that was $5,712 less than the cash price as sold to Plaintiff.

34. On January 7, 2016, Plaintiff, by her attorney, sent a copy of the independent expert's report to Gallagher and demanded that Gallagher repurchase the Vehicle.

35. Gallagher has failed and refused to repurchase the Vehicle and has failed and refused to refund to Plaintiff the amounts that she paid for the Vehicle.

## V.  CAUSES OF ACTION

### FIRST COUNT – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

36. Paragraphs 1 through 35 are herein incorporated.

37. This Count is asserted under Magnuson-Moss for Gallagher's breach of the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314.

38. The Vehicle is a consumer product, as that term is defined in §2301(1) of the Magnuson-Moss Federal Warranty Act (15 U.S.C. §§ 2301-2312).

39. The Vehicle, as sold to Plaintiff, was not in merchantable condition at the time of sale because it was unsafe to drive and it would not pass in trade under the description of a Certified Pre-Owned 2011 Buick Regal.

40. Gallagher knew, or reasonably should have known, based on its expertise in the sale and certification of used Buick vehicles, that the Vehicle did not meet the standards for CPO status and that it was not in merchantable condition.

41. Gallaher breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314.

42. Gallagher's breaches of the implied warranty were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad

6

motive and with a reckless indifference to Plaintiff's interests and the injury that she sustained.

43. Gallagher is liable to Plaintiff for the $5,712 diminished value of the Vehicle plus consequential damages in an amount not yet calculated but believed to be more than $1,000, plus common law punitive damages which are estimated to exceed $50,000.

44. Consequently, the amount in controversy in this action is in excess of $58,000.

45. Plaintiff also seeks attorney's fees and costs pursuant to the Magnuson-Moss Warranty Act.

### SECOND COUNT – BREACH OF EXPRESS WARRANTY

46. Paragraphs 1 through 35 are herein incorporated.

47. Gallagher made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

48. Specifically, Gallagher made affirmations of fact that the Vehicle had previously undergone the necessary inspections and reconditioning and that it met the requisite criteria to be designated as a CPO vehicle.

49. The advertising of the Vehicle as a CPO vehicle and Gallagher's representations that the Vehicle was a CPO vehicle constituted a description of the Vehicle that was part of the basis of the bargain, i.e., that the Vehicle satisfied the rigorous requirements for certification under GM's CPO program, and this description became part of the basis of the bargain.

50. Either the Dealership did not conduct the inspection required for certification, or it had so imperfectly conducted the inspection that it constituted a failure to inspect, or it knowingly certified a Vehicle that did not meet the requirements for certification.

51. Gallagher also made statements regarding the condition of the Vehicle in the K-208 form that constituted a description of the Vehicle that was part of the basis of the bargain, i.e., that the Vehicle's frame or uni-body structure had been inspected and found to be safe for legal operation on state roads and highways.

52. Gallagher has breached its express warranties as aforedescribed.

53. The Dealership's breaches of express warranty were intentional, tortious in nature, in bad faith, was wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiff's interests and the injury that she sustained.

54. As a result of Gallagher's breaches of express warranty, it is liable to Plaintiff for damages, including common law punitive damages, and attorney's fees and costs.

**THIRD COUNT – CONNECTICUT UNFAIR TRADE PRACTICES ACT**

55. Paragraphs 1 through 35 are incorporated.

56. Through its above-described actions, Gallagher also violated CUTPA.

57. Gallagher violated CUTPA when it falsely and deceptively represented that the Vehicle met the GM CPO criteria and that it had been inspected and found safe to drive.

58. Because the defects in the Vehicle were apparent to any automotive professional, Gallagher's certifications regarding the GM CPO program and on the Connecticut K-208 form were false, fraudulent, and issued in bad faith.

59. Gallagher's further violated CUTPA by its false and deceptive representations to Plaintiff that the prior accident was minor and that the Vehicle had not suffered any damage to the frame.

60. Gallagher has engaged in unfair and deceptive acts in violation of CUTPA for which Plaintiff has suffered an ascertainable loss of money and property, including, but not limited to, the purchase of a Vehicle that was worth substantially less than the amount that it would be worth if the representations had been true.

61. For Gallagher's CUTPA violations, Plaintiff is entitled to actual damages, attorney's fees and costs, and, in the discretion of the Court, punitive damages.

62. Plaintiff also seeks as an equitable remedy an order requiring Gallagher to repurchase the Vehicle from her.

Wherefore, Plaintiff claims actual damages, common law and statutory punitive damages, attorney's fees and costs; and an order that defendant repurchase the Vehicle from Plaintiff or, alternatively, an award of damages in the amount of the diminished value of the vehicle; and such other further relief to which Plaintiff is, at law, or in equity and by statute entitled to against Defendant.

        PLAINTIFF, AMY LEE OTIS


        By: /s/ *Daniel S. Blinn*
           Daniel S. Blinn (ct02188)
           dblinn@consumerlawgroup.com
           Consumer Law Group, LLC
           35 Cold Spring Rd. Suite 512
           Rocky Hill, CT  06067
           Tel. (860) 571-0408
           Fax (860) 571-7457